**SANDERS LAW GROUP**
Craig B. Sanders (SBN: 284397)
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
Our File No.: 145660
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Level 12 Productions, LLC,<br><br>Plaintiff,<br><br>v.<br><br>The Young Turks, Inc.,<br><br>Defendant. | Case No:<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Level 12 Productions, LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendant The Young Turks, Inc. ("*Defendant*") states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Plaintiff owns the copyright in a video recording of political activist Jake Lang and others unfurling a banner calling for mass deportations from the stands of Nationals Park in Washington, D.C., during a Washington Nationals game on May 17, 2026 (the "*Video*").

3. Defendant owns and operates TYT, a digital news network that

publishes and monetizes video programming through its YouTube channels and Facebook pages, including "The Young Turks," "TYT Sports," and "The Breakdown."

4. The day after Plaintiff published the Video, Defendant, without license or authorization, copied the Video, superimposed its own "TYT" logo on it, and uploaded it to three of its Facebook pages and its TYT Sports YouTube channel. Two of those posts remain publicly available today, after Defendant was notified of Plaintiff's claim.

## PARTIES

5. Plaintiff is a limited liability company organized under the laws of the State of New York.

6. Defendant is a Delaware corporation with a principal place of business at 6230 Wilshire Boulevard, Suite 140, Los Angeles, California 90048, in Los Angeles County.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the federal copyright infringement claim pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

8. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in California and, upon information and belief, the acts of infringement alleged herein were directed and carried out from California.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendant resides and may be found in this District, regularly conducts business in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claim occurred in this District.



SLG SANDERS · LAW GROUP ·

SLG SANDERS · LAW GROUP ·

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff and the Video

10. Plaintiff is a video production company that produces, publishes, and licenses news footage of protests, political events, and breaking news across the United States.

11. Plaintiff's footage is published under the "BG On The Scene" name, including on the X account @BGOnTheScene, which is operated by Plaintiff's owner, independent videographer Brendan Gutenschwager.

12. Mr. Gutenschwager has covered protests, civil unrest, and political events across the country since at least 2020. His footage of the January 6, 2021 riot at the U.S. Capitol remains among the most widely used footage of that event, and footage published under the BG On The Scene name has been featured by national and cable news outlets.

13. Because footage published under the BG On The Scene name was frequently picked up by others without credit, Plaintiff's footage is watermarked with the "@bgonthescene" handle to identify its source.

14. Plaintiff engages professional videographers to film events on its behalf. Under written assignment agreements, those videographers assign to Plaintiff their copyrights in the footage they create, together with all causes of action arising from that footage.

15. Plaintiff licenses its footage to news organizations, television networks, digital publishers, and other media companies for a fee. Licensing revenue is a principal source of Plaintiff's income, and the value of breaking-news footage is greatest in the hours and days immediately after an event.

16. Unauthorized use of Plaintiff's footage deprives Plaintiff of licensing income, diminishes the value of its works, and undermines the market for authorized licenses.

17. The Video was filmed by Theoren Papp, a professional videographer and journalist. Mr. Papp creates original audiovisual works and news footage, including coverage of breaking news and other public-interest events, which are commercially distributed and licensed through Plaintiff to media outlets and publishers throughout the United States.

18. By a written Copyright Assignment dated March 6, 2026, Mr. Papp irrevocably transferred and assigned to Plaintiff all of his right, title, and interest in the works he creates during the term of that agreement, together with all causes of action accruing or accrued, including the right to register those works in Plaintiff's name. The Video was created during the term of that agreement.

19. On May 17, 2026, during the Washington Nationals' game against the Baltimore Orioles at Nationals Park, Mr. Papp recorded Jake Lang and others unfurling a large banner reading "SAVE AMERICA – DEPORT 100+ MILLION" over an upper-deck railing, together with the reaction of the crowd and stadium staff, until the banner was taken down. The Video runs approximately one minute and fourteen seconds.

20. In creating the Video, Mr. Papp personally selected the vantage point, framing, and timing of the recording; decided when to begin and end recording, when to zoom, and when and how to pan between the banner and the surrounding crowd; and made each of the other creative determinations necessary to create the work.

21. On May 17, 2026, Plaintiff first published the Video on X at URL: https://x.com/BGOnTheScene/status/2056125963021291868, bearing the "@bgonthescene" watermark. A still image from the Video as published is attached hereto as Exhibit 1.

22. From the day of first publication, the Video was offered for license by Plaintiff to news organizations and other media outlets for purposes of further

distribution and public display.

23. The Video was widely viewed and reported upon in the days following its publication.

24. On June 11, 2026, the Video was registered by the United States Copyright Office (the "*USCO*") under Registration No. PA 2-607-299, within three months of its first publication. The registration identifies Mr. Papp as the author and Plaintiff as the copyright claimant by written transfer.

25. Plaintiff created and published the Video with the intention of licensing it commercially and for the purpose of display and public distribution.

**B. Defendant's Business**

26. Defendant operates TYT, which describes itself as one of the largest independent digital news and politics networks in the United States.

27. Defendant produces and distributes news, commentary, podcasts, livestreams, and video programming across numerous digital platforms, including its own website, YouTube, livestream and podcast platforms, and social media channels. Its programs and channels include "The Young Turks," "TYT Sports," "The Breakdown," and "The Damage Report."

28. Defendant is a sophisticated commercial media company founded in 2002 by Cenk Uygur and has operated continuously as a professional digital media company since then.

29. Upon information and belief, Defendant has raised tens of millions of dollars in venture funding, employs dozens of personnel, and operates as a professional news and media enterprise engaged in the creation, acquisition, publication, distribution, monetization, and licensing of audiovisual and other copyrighted content.

30. Upon information and belief, Defendant derives revenue from multiple sources, including advertising sales, sponsorships, podcast advertising, video



SLG SANDERS LAW GROUP

advertising, subscriptions, memberships, premium content offerings, and related media ventures. Defendant actively monetizes content distributed through digital platforms and advertising partnerships, including the YouTube channels and Facebook pages on which it published the Video.

31. Defendant's business model depends upon the regular creation, publication, licensing, distribution, and monetization of copyrighted works.

32. Accordingly, Defendant is highly familiar with copyright law, intellectual property rights, content ownership, licensing requirements, and the need to obtain authorization before publishing copyrighted material created by third parties.

33. Upon information and belief, Defendant's programming generates hundreds of millions of video views per month across its platforms, and its audience numbers in the millions across its YouTube channels and Facebook pages. Defendant's TYT Sports YouTube channel alone has more than 1.5 million subscribers.

34. Upon information and belief, Defendant creates, owns, and exploits its own copyrighted programming, and owns federal trademark filings for marks including THE YOUNG TURKS, TYT, and THE DAMAGE REPORT.

35. Defendant is also familiar with copyright claims arising from its use of others' work. In 2022, a professional photographer sued Defendant for copyright infringement arising from the use of her photographs in videos posted to Defendant's YouTube channel. *Dermansky v. The Young Turks, Inc.*, C.A. No. 22-345-GBW (D. Del.), transferred to this District in July 2023.

36. Defendant has also been sued for copyright infringement in this District at least eight times since 2021 by photographers and videographers whose work it used without a license, including in *Bachom v. The Young Turks, Inc.*, No. 2:21-cv-05015 (C.D. Cal.); *Roberts v. The Young Turks, Inc.*, No. 2:22-cv-01190 (C.D. Cal.);

SLG SANDERS · LAW GROUP ·

SLG SANDERS · LAW GROUP ·

*Coe v. The Young Turks, Inc.*, No. 2:23-cv-04705 (C.D. Cal.); *Jayjack v. The Young Turks, Inc.*, No. 2:24-cv-01439 (C.D. Cal.); *Ong v. The Young Turks, Inc.*, No. 2:24-cv-01583 (C.D. Cal.); *Lynk Media LLC v. The Young Turks, Inc.*, No. 2:24-cv-02279 (C.D. Cal.); *Global Weather Productions LLC v. The Young Turks, Inc.*, No. 2:25-cv-02668 (C.D. Cal.); and *Global Weather Productions LLC v. The Young Turks, Inc.*, No. 2:26-cv-02416 (C.D. Cal.), filed March 6, 2026. Each of those actions was filed before Defendant copied the Video.

**C. Defendant's Infringing Activity**

37. On or about May 18, 2026, one day after Plaintiff first published the Video, Defendant, without permission or authorization from Plaintiff, willfully and volitionally reproduced the Video, superimposed its own "TYT" logo and the caption "@BGONTHESCENE/TWITTER" on it, and uploaded it, under the title "Racist Losers Crash Baseball Game, Leave Fans Too Stunned to React," to the following accounts and URLs (collectively, the "*Infringements*"):

a. Defendant's "The Young Turks" Facebook page at URL: https://www.facebook.com/reel/1316882277254141;

b. Defendant's "The Breakdown" Facebook page at URL: https://www.facebook.com/reel/1038262588560321;

c. Defendant's "TYT Sports" Facebook page at URL: https://www.facebook.com/reel/1703584600641783; and

d. Defendant's "TYT Sports" YouTube channel at URL: https://www.youtube.com/watch?v=Xfihnhapx28.

38. Copies of screengrabs depicting the Infringements are attached hereto as Exhibit 2.

39. Each Infringement reproduces and displays the Video in its entirety, unaltered except for Defendant's added logo and caption, with Plaintiff's "@bgonthescene" watermark still visible beneath Defendant's "TYT" logo.

40. While the Video plays in full, Defendant overlays commentary about the events the Video depicts and related political subjects. That commentary reports on and reacts to the same event the Video depicts. It does not comment on the Video itself, and it did not require Defendant to reproduce the entire Video.

41. The Infringements are not links to or embeds of Plaintiff's post. Upon information and belief, Defendant downloaded a copy of the Video and uploaded that copy as its own native video post on each of its Facebook pages and its YouTube channel, where each copy was stored and displayed as Defendant's own content.

42. Defendant's caption "@BGONTHESCENE/TWITTER" shows that Defendant knew the Video was not its own and knew its source. Defendant's description of the YouTube Infringement went further, directing viewers to "Follow Brendan Gutenschwager on Twitter/X HERE" with a link to the @BGOnTheScene account. Defendant thus knew exactly whose Video it was and how to reach its owner, yet did not seek or obtain a license. Crediting the source of a work is not a license to use it.

43. Defendant used the Video for the same purpose for which it was created and for which Plaintiff licenses its footage: to show viewers the event the Video depicts. Defendant's use served as a substitute for a licensed use of the Video and did so at the moment the Video's news value, and its licensing value, were greatest.

44. The Infringements are copies of Plaintiff's Video, including its protectable elements such as its vantage point, framing, timing, camera movement, and overall expressive content.

45. Each Infringement includes a URL that was accessible to the public and remained available for viewing for a non-transitory period of time.

46. Upon information and belief, Defendant's Facebook pages and YouTube channel are owned and operated by Defendant, and Defendant, through its employees, producers, editors, and social media personnel acting within the scope

of their employment or agency (the "*Representatives*"), selects, edits, brands, uploads, publishes, monitors, and removes the content that appears on them.

47. Upon information and belief, the Video was intentionally selected, edited, branded, and published by Defendant and its Representatives. The Infringements were not posted at the direction of a "user" within the meaning of 17 U.S.C. §512(c), and Defendant is not entitled to the limitations on liability set forth in 17 U.S.C. §512.

48. Upon information and belief, Defendant had at all times the right and ability to supervise and control the content on its Facebook pages and YouTube channel, including the ability to remove the Infringements.

49. Upon information and belief, Defendant received a financial benefit directly attributable to the Infringements, including advertising revenue, audience engagement, and growth of its channels and pages. By May 20, 2026, two days after it was posted, the YouTube Infringement had been viewed more than 30,000 times, and the Infringement on Defendant's "The Young Turks" Facebook page had drawn hundreds of reactions, more than one hundred comments, and dozens of shares.

50. Defendant's use of the Video harmed the actual market for the Video, and Defendant's use, if widespread, would harm Plaintiff's potential market for the Video and for licensed news footage generally.

51. On or about October 13, 2026, Plaintiff, through counsel, notified Defendant, through its counsel, of the Infringements and requested any license information supporting Defendant's use of the Video.

52. Defendant has not identified any license for the Video and has not compensated Plaintiff for its use.

53. Despite that notice, the Infringements on Defendant's "The Young Turks" Facebook page at URL: https://www.facebook.com/reel/1316882277254141 and Defendant's "The Breakdown" Facebook page at URL:



SLG SANDERS · LAW GROUP ·

https://www.facebook.com/reel/1038262588560321 remain publicly available as of the filing of this Complaint. Copies of current screengrabs are attached hereto as Exhibit 3.

54. Upon information and belief, the Infringements on Defendant's "TYT Sports" Facebook page and "TYT Sports" YouTube channel have since been removed. Their removal does not cure the infringement that occurred while they were displayed.

55. Defendant's infringement was willful. Defendant, a sophisticated media company, copied the Video with knowledge of its source, did so without seeking a license, and has continued to display it on two of its Facebook pages after receiving notice of Plaintiff's claim. Defendant did so after having been sued for copyright infringement in this District at least eight times.

56. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

57. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

**FIRST CAUSE OF ACTION**

(*Direct Copyright Infringement, 17 U.S.C. §501 et seq.*)

58. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

59. The Video is an original, creative work in which Plaintiff owns a valid copyright by written assignment from its author.

60. The Video is registered with the USCO, and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO. Because the Video was registered within three months of its first publication, Plaintiff is entitled to elect statutory damages and to recover its attorney's fees under 17 U.S.C. §§ 412, 504(c), and 505.



SLG SANDERS LAW GROUP

61. Plaintiff has not granted Defendant a license or the right to use the Video in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

62. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant reproduced, distributed, adapted, and publicly displayed the Video, thereby violating Plaintiff's exclusive rights in its copyright.

63. Defendant's reproduction, distribution, and public display of the Video constitute willful copyright infringement.

64. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award of statutory damages against Defendant pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement.

65. As a result of Defendant's violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendant.

66. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

## JURY DEMAND

67. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment finding that Defendant has infringed Plaintiff's rights in the Video in violation of 17 U.S.C. §501 et seq. and award damages and monetary relief as follows:



SLG SANDERS · LAW GROUP ·

a. finding that Defendant infringed Plaintiff's copyright interest in and to the Video by reproducing, distributing, adapting, and publicly displaying it without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award of statutory damages against Defendant pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 11, 2026

**SANDERS LAW GROUP**

By: *_/s/ Craig B. Sanders_*
Craig B. Sanders, Esq. (Cal Bar 284397)
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: csanders@sanderslaw.group
Office: (516) 203-7600
*Attorneys for Plaintiff*
Our File No.: 145660